IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| MARGARET BOERSMA,<br><br>  Plaintiff,<br><br>v.<br><br>UNUM LIFE INSURANCE COMPANY OF AMERICA and UNUM GROUP CORP.,<br><br>  Defendants. | Civil Action No. |

**COMPLAINT FOR RECOVERY OF PLAN BENEFITS AND FOR THE ENFORCEMENT OF RIGHTS UNDER ERISA**

COMES NOW, Plaintiff, Margaret Boersma, and makes the following representations to the Court for the purpose of obtaining relief from Defendants' refusal to pay Long-Term Disability ("LTD") benefits due under an employee benefits plan, Defendants' refusal to pay benefits under Plaintiff's life insurance Policies, and for Defendants' other violations of the Employee Retirement Income Security Act of 1974 ("ERISA"):

**JURISDICTION AND VENUE**

1. This Court's jurisdiction is invoked pursuant to 28 U.S.C. § 1337 and 29 U.S.C. § 1132(e) (ERISA § 502(e)). Plaintiff's claims "relate to" an "employee welfare benefits plan" as defined by ERISA, 29 U.S.C. § 1001 et seq., and the subject Employee Welfare Benefit Plan constitutes a "plan under ERISA."

2. The ERISA statute, at 29 U.S.C. § 1133, as well as Department of Labor regulations, at 29 C.F.R. § 2560.503-1, provide a mechanism for administrative or internal appeal of benefits denials. In this case, those avenues of appeal have been exhausted and this matter is now properly before this court for judicial review.

3. Venue is proper within the Middle District of Tennessee pursuant to 29 U.S.C. § 1132(e)(2).

## PARTIES

4. Plaintiff, Margaret Boersma, (hereinafter "Plaintiff"), was at all relevant times, and is currently a resident of Maury County, Tennessee.

5. Defendant Unum Life Insurance Company of America ("Unum Life") is the underwriter of group LTD insurance policy number 951828 001, issued to Plaintiff's former employer, FLEETCOR Technologies, Inc., and is the party obligated to pay benefits and to determine eligibility for LTD benefits under the Plan.

6. Unum Life is an insurance company authorized to transact the business of insurance in this state, and may be served with process through the Commissioner of the Tennessee Department of Commerce and Insurance, 500 James Robertson Parkway, Suite 660, Nashville, Tennessee 37243-1131.

7. Defendant Unum Group Corporation ("Unum Group") is the parent company of Defendant Unum Life.

8. Defendant Unum Group exercises significant control over the policies and actions of Defendant Unum Life.

9. Defendant Unum Group is the employer of all persons who acted on behalf of Unum Life.

10. Defendant Unum Group may be served with process by and through its registered agent for service, Corporation Service Company, 2908 Poston Avenue, Nashville, TN 37203.

# FACTS

11. Plaintiff was employed by FLEETCOR Technologies, Inc. as the Director of Prepaid Ops.

12. FLEETCOR Technologies, Inc. maintained a LTD benefits plan ("the Plan") for the benefit of its employees.

13. LTD benefits under the Plan were funded by Unum Life policy number 951828 001.

14. Plaintiff is a participant or beneficiary of the Plan and is covered by the Policy that provides LTD benefits under the Plan.

15. Plaintiff ceased work due to a disability including, rheumatoid arthritis, fibromyalgia, peripheral neuropathy, bilateral carpal tunnel syndrome, and De Quervian's tenosynovitis, on or around October 5, 2017, while covered under the Plan.

16. Plaintiff has been and continues to be disabled as defined by the provisions of the Plan.

17. Plaintiff timely filed an application for LTD benefits under the Plan.

18. By letter dated March 28, 2018, Defendants stated it was going to pay Plaintiff's benefits under Reservation of Rights ("ROR") while they schedule a medical examination for Plaintiff to attend.

19. By email dated March 28, 2018, Defendants emailed FLEETCOR that Plaintiff's claim was approved and her benefits were to begin on January 4, 2018, despite sending Plaintiff a letter the same day stating that her claim was being paid under ROR.

20. On March 29, 2018, Plaintiff called Defendants and asked why FLEETCOR received an approval letter and she received a ROR letter.

21. On March 30, 2018, Defendants sent FLEETCOR email which was different from its first email and stated that Plaintiff was receiving monthly benefits while Defendants conclude its review and decision.

22. By letter dated April 26, 2018, Defendants stated it was paying a month of benefits under ROR while they wait for the medical examination report from the medical exam Defendants scheduled for Plaintiff to attend.

23. Plaintiff attended a medical examination scheduled by Defendants on May 8, 2018 with Dr. Pansuria.

24. The medical report from Dr. Pansuria had multiple inconsistencies, which are further noted in Plaintiff's sworn declaration submitted with her appeal letter dated February 22, 2019, including that Dr. Pansuria opined that Plaintiff only had 8 of the 18 tender points for fibromyalgia and Plaintiff explained that Dr. Pansuria only physically touched Plaintiff's hands.

25. Multiple months before the scheduled medical examination with Dr. Pansuria, Plaintiff requested from Defendant that it have a videographer record the medical examination.

26. On February 16, 2018, Defendant told Plaintiff that a videographer would be present at the medical examination.

27. On February 19, 2018, Defendants included in a claim note that the DBS was advised to obtain consult with legal regarding videography.

28. On February 22, 2018, Defendant noted in a claim note that Defendant's legal department said not to schedule a video recording of the medical examination.

29. Plaintiff was not informed that Defendants would not provide a videographer at the medical examination and relied on Defendant's assurance that it would have a videographer present at the medical examination.

30. Defendants' decision to refuse a videographer after indicating it would provide one and without providing notice to Plaintiff that there would not be a videographer, was a breach of fiduciary duties toward Plaintiff.

31. This breach prejudiced Plaintiff and prevented her from having the protection she needed at the medical examination and the option to have the recording including in her claim file.

32. On May 25, 2018, Defendants sent Plaintiff a letter which states that it is continuing to pay Plaintiff's claim under ROR because it needs updated medical records from Plaintiff's treating physicians.

33. On July 6, 2018, Defendants sent Plaintiff another ROR letter which requested medical records from several treating physicians.

34. Plaintiff's claim was paid from January 4, 2018 to August 27, 2018.

35. By letter dated August 27, 2018, Defendants terminated Plaintiff's claim by stating that she can perform her past occupation, relying on the medical examination that Defendant scheduled for Plaintiff to contend that she has no objective evidence of a disability, only subjective complaints.

36. Plaintiff retained counsel and filed a timely appeal on February 22, 2019, and included in support of her appeal 18 exhibits which consisted of a functional capacity evaluation, updated medical records, a letter from Plaintiff to FLEETCOR, a sworn statement with Plaintiff's treating physician, Dr. Gannon, a medical assessment form, an opinion letter from Plaintiff's treating physician, a chart of the tender points for fibromyalgia, sworn declarations form Plaintiff, her husband, her mother in law, and her previous co-worker, and an email from FLEETCOR.

37. The exhibits submitted with the appeal included evidence that Plaintiff continues to suffer from her many conditions, which also cause Plaintiff to have to take significant medication to try and control her severe symptoms such as constipation, diarrhea, and fatigue.

38. In Dr. Gannon's sworn statement, she explained that Plaintiff had a significant decline over the years and now has significant fatigue that causes difficulty getting out of bed, as well as constipation, hip and back pain, difficulty holding a pen, hand swelling, joint pain, stiffness, decreased grip, and difficulty making a fist.

39. By letter dated May 13, 2019, Defendants denied Plaintiff's appeal by stating that Plaintiff can perform her past occupation based on the previous medical examination scheduled by Defendants and its medical file reviewing physician's opinion that Plaintiff is capable of performing the duties of her past occupation.

40. The May 13, 2019 denial letter confirmed the Plaintiff had exhausted her administrative remedies and that she had a right to bring a lawsuit under ERISA § 502(a) to challenge the denial of her benefits.

41. Plaintiff has exhausted her required administrative remedies with respect to the LTD and LWOP claims.

42. Life Insurance benefits under the Plan were funded by insurer policy No. 951800 issued by insurer to sponsor.

43. Plaintiff was enrolled in coverage for $613,000 for herself, $250,000 for her spouse, and $10,000 for each of her three children in life insurance benefits under the Life Insurance Policies.

44. Upon information and belief, the Life Insurance Policy provides that coverage is continued and Life Insurance Premiums will be waived if a participant becomes disabled while

6

Case 3:19-cv-00649    Document 1    Filed 07/30/19    Page 6 of 13 PageID #: 6

covered under the Life Insurance Policy. Such benefits are termed as Life Waiver of Premium ("LWOP") benefits.

45. Plaintiff is a participant or beneficiary of the Plan and is covered by the Policies that provide LTD and Life Insurance benefits.

46. The Defendants' decision-making process violated ERISA by failing to give the Plaintiff a full and fair review of the claim.

47. The Defendants' decision-making process violated the terms of the applicable ERISA Plans and ERISA law and regulations.

48. The Defendants' decision to deny benefits was wrong under the terms of the Plan and under ERISA, and was arbitrary and capricious.

49. Unum would pay any benefits due out of their own funds.

50. Unum was under a perpetual conflict of interest because the benefits would have been paid out of its own funds.

51. Unum owed Plaintiff duties as a fiduciary of the ERISA Plan, including the duty of loyalty.

52. Unum allowed its concern over its own funds to influence its decision-making.

53. Defendants have acted under a policy to take advantage of the potential applicability of ERISA to claims.

54. Unum's conflict of interest and bias is evident in the fact that it establishes monthly financial targets that are reached by denying claims whose reserves would cumulatively meet those targets.

55. The monthly financial targets for denying claims are called "recovery[1] plans," or words to that effect.

56. The monthly targets, or "recovery plans," include the dollar amounts to be reached in terms of reserves on denied or "recovered" claims and the count of total claims that should be recovered.

57. These "recovery plans" are given by Vice Presidents in the claims department to Assistant Vice Presidents in hard-copy printouts and verbally in order to hide the fact that this information is being transmitted.

58. The Vice President also gives to the Assistant Vice Presidents a list of claims that has been identified as potential "recoveries," which list included the names of individual insureds and the reserve amount associated with the claims of those insureds.

59. The list of claims that are potential recoveries, including the reserve amounts, is likewise transferred by the Vice President by hard copy printouts.

60. The recovery plans and the list of potentially recoverable claims provided to the Assistant Vice President are disseminated by the Assistant Vice Presidents to the Directors[2] they supervised, and are used by the Assistant Vice President to coach and supervise their Directors.

61. The recovery plans and the list of potentially recoverable claims that are given to the Assistant Vice Presidents are passed on to Directors verbally, so there will be no record of the Directors being told their monthly financial targets of "recoveries" or denied claims.

---

[1] When Unum Life denies a claim before all of the contractual benefits are paid, that is referred to as a "recovery."

[2] "Directors" at Unum are the employees who ultimately make the decision to approve or deny claims for benefits.

62. After the Assistant Vice Presidents pass on the recovery plans and the list of potentially recoverable claims to the Directors, the Assistant Vice Presidents shred the documents that contained the names of individual insurers and their reserve amounts.

63. The Directors use this information, and the targeted financial amounts to guide them and the claims handlers under them to deny meritorious claims in order to meet the "recovery plan" for their team.

64. In order to receive bonuses under Unum's incentive program, Unum employees are evaluated against certain criteria, which include planned claim terminations, expected liability acceptance rates, and anticipated reopen rates. (see e.g., Exhibit 1, ID Director Scorecards).

65. Internal documents reveal that targets and goals for claim closures are set at the unit level and that there are goals set for open claim recoveries (i.e., denying an open claim) per day. (See Exhibit 2, Weekly Tracking Reports).

66. In his recent deposition, Anthony Scuderi—who was an Assistant Vice President with Unum—confirmed Unum continues to target individual claims for their value; testifying that his supervising Vice President would provide him with printed sheets that included the names and financial reserve value of claimants each month; that he would copy the information in those sheets onto a spreadsheet on his personal computer; that he would then verbally disseminate that information to the claim managers he supervised; that he would shred the paper document; and that he would report back to his supervising Vice President periodically on the progress of meeting their "paid recovery" metric (Exhibit 3, selected excerpts from the deposition of Anthony Scuderi). He testified that he believed this was the common practice of all Unum AVPs. See, Id.

67. In essence, Unum's claims and appeals units are provided the targets for claim closures and uphold decisions and then are provided the specific claims that will meet those expectations.

68. Paul Peter, another former-Assistant Vice President for Unum, testified that he received the "recovery plan" each month from his Vice President, Maureen Griffin, and that he passed this information down to the Directors he supervised. (See Exhibit 4, selected excerpts from the deposition of Paul Peter). Paul Peter also testified that he received the list of claims that were identified as potential recoveries, which included the names of the claimants and the reserve amount associates with their claim. See, Id. Paul Peter confirmed that he and the Directors he supervised were graded and held accountable for meeting the "recovery plan" and he impressed upon his Directors the importance of meeting the planned numbers. See, Id., at p. 29-30.

69. Defendants targeted Plaintiff's claim for termination in order to meet their financial and count goals.

70. Defendants' targeting of Plaintiff's claim for denial taints all evidence it developed during the review of her claim as the review was designed to reach the result of a denial, not an impartial weighing of the evidence.

71. Unum breached its fiduciary duties to Plaintiff, including the duty of loyalty.

### FIRST CAUSE OF ACTION
### FOR PLAN BENEFITS AGAINST THE DEFENDANT
### PURSUANT TO 29 U.S.C. §§ 1132(a)(1)(B)

PLAINTIFF incorporates the allegations contained in the prior paragraphs as if fully stated herein and says further that:

72. Under the terms of the Plan, Defendants agreed to provide Plaintiff with LTD benefits in the event that Plaintiff became disabled as defined by the Plan.

73. Plaintiff is disabled and entitled to benefits under the terms of the Plan.

74. Defendants failed to provide benefits due under the terms of the Plan, and these denials of benefits to Plaintiff constitute breaches of the Plan.

75. The decisions to terminate benefits were wrong under the terms of the Plan.

76. The decisions to terminate benefits and decision-making processes were arbitrary and capricious.

77. The decisions to deny benefits were not supported by substantial evidence in the record.

78. As a direct and proximate result of the aforementioned conduct of the Defendants in failing to provide benefits for Plaintiff's disability, Plaintiff has been damaged in the amount equal to the amount of benefits to which she would have been entitled to under the Plan.

79. As a direct and proximate result of the aforementioned conduct of the Defendants in failing to provide benefits for Plaintiff's disability, Plaintiff has suffered, and will continue to suffer in the future, damages under the Plan, plus interest and other damages, for a total amount to be determined.

## SECOND CAUSE OF ACTION
## FOR LIFE INSURANCE PLAN BENEFITS AGAINST THE DEFENDANTS
## PURSUANT TO 29 U.S.C. § 1132(a)(1)(B)

Plaintiff incorporates the allegations contained in the prior paragraphs as if fully stated herein and says further that:

80. Under the terms of the Plan, Defendant agreed to provide Plaintiff with LWOP benefits in the event that Plaintiff became disabled as defined by the Life Insurance Policy.

81. Plaintiff is disabled and entitled to benefits under the terms of the Life Insurance Policy.

82. Defendant failed to provide benefits due under the terms of the Life Insurance Policy, and these denials of benefits to Plaintiff constitute breaches of the Plan.

83. The decisions to terminate benefits were wrong under the terms of the Plan.

84. The decisions to terminate benefits and decision-making processes were arbitrary and capricious.

85. The decisions to deny benefits were not supported by substantial evidence in the record.

86. As a direct and proximate result of the aforementioned conduct of Defendant in failing to provide benefits for Plaintiff's disability, Plaintiff has been damaged in the amount equal to the amount of benefits to which she would have been entitled to under the Plan.

87. As a direct and proximate result of the aforementioned conduct of the Defendant in failing to provide benefits for Plaintiff's disability, Plaintiff has suffered, and will continue to suffer in the future, damages under the Plan, plus interest and other damages, for a total amount to be determined.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that this Court grant her the following relief in this case:

**On Plaintiff's First Cause of Action**:

1. A finding in favor of Plaintiff against Defendants;

2. Damages in the amount equal to the disability income benefits to which she was entitled through date of judgment, for unpaid benefits pursuant to 29 U.S.C. § 1132(a)(1)(B);

3. Prejudgment and postjudgment interest;

4. An Order requiring the Plan or appropriate Plan fiduciary to pay continuing benefits in the future so long as Plaintiff remains disabled under the terms of the Plan.

5. An Order requiring Plan or appropriate Plan fiduciary to provide Plaintiff with any other employment benefits to which she would be entitled pursuant to a finding that she is disabled under the Plan or under any other employee welfare benefit plan;

6. Plaintiff's reasonable attorney fees and costs; and

7. Such other relief as this court deems just and proper.

**On Plaintiff's Second Cause of Action:**

8. A finding in favor of Plaintiff against Defendant;

9. An Order requiring the Plan or appropriate Plan fiduciary to reinstate her life insurance benefits and pay continuing LWOP benefits in the future so long as Plaintiff remains disabled under the terms of the Plan.

10. Plaintiff's reasonable attorney fees and costs; and

11. Such other relief as this court deems just and proper.

Plaintiff further requests that the Court order Defendants to provide to Plaintiff with a bound copy of the ERISA record consecutively paginated.

Dated this 30th day of July, 2019.

> Respectfully submitted,
>
> ERIC BUCHANAN & ASSOCIATES, PLLC
> ATTORNEYS FOR PLAINTIFF
>
> BY: */s/ Hudson T. Ellis*
> Hudson T. Ellis (BPR #28330)
> Audrey C. Dolmovich (BPR #035972)
> 414 McCallie Avenue
> Chattanooga, TN 37402
> (423) 634-2506
> FAX: (423) 634-2505